Courtney Miller O'Mara (NV Bar No. 10683)
FENNEMORE CRAIG, P.C.
300 E. 2nd Street
Reno, NV 89501
Telephone:     (775) 788-2200
Facsimile:     (775) 786-1177
Email:         comara@fclaw.com

Shirley S. Cho (CA Bar No. 192616)
(*Pro Hac Vice Application Forthcoming In Compliance With LR IA 11-2*)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:     (415) 263-7000
Facsimile:     (415) 263-7010
E-mail:        scho@pszjlaw.com

**Counsel for the Official Committee of Unsecured Creditors**

Eric Goldberg (CA Bar No. 157544)
eric.goldberg@dlapiper.com
Paul Wassgren (NV Bar No. 9216)
paul.wassgren@dlapiper.com
DLA PIPER LLP (US)
2000 Avenue Of The Stars, Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel:  310.595.3000     Fax:  310.595.3300

**Counsel to Lawrence Investments, LLC**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>NEW CAL NEVA LODGE, LLC, a Nevada limited liability company;<br><br>                    Debtor. | Case No. 3:17-cv-00636-RCJ<br><br>US Bankruptcy Court, District of Nevada<br>Case No. 16-51282-GWZ<br>Appeal Ref. No.: 17-49<br><br>**JOINT OPPOSITION TO HALL CA-NV LLC'S EXPEDITED MOTION TO STAY CONFIRMATION ORDER PENDING APPEAL**<br><br>Hearing Date: October 24, 2017<br>Hearing Time: 3:00 p.m. |

1

HALL CA-NV, LLC, a Texas Limited-Liability Company.

                Appellant,

LAWRENCE INVESTMENTS, LLC; OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NEW CAL-NEVA LODGE, LLC

                Appellees.

Lawrence Investments, LLC ("Lawrence") and the Official Committee of Unsecured Creditors (the "Committee"), the co-proponents of the First Amended Plan of Liquidation ("Plan") for New Cal-Neva Lodge, LLC ("Debtor"), files this opposition to Hall CA-NV LLC's Expedited Motion to Stay Confirmation Order Pending Appeal (the "Hall Motion for Stay")[1], and in support thereof states as follows:

**I.     Statement of Facts**

The Debtor's Bankruptcy and Plan

1. The Debtor has been attempting to locate financing or an investment source since at least October 2015. See Debtor's Status Conference Statement at p. 2 [Docket No. 74][2]. The Debtor commenced this bankruptcy case by filing a voluntary chapter 11 petition on July 28, 2016 ("Petition Date") in order to stave off a state-court foreclosure action by Hall CA-NV LLC ("Hall"). For the next year, the Debtor tried, unsuccessfully, to find a buyer or plan proponent, and ran an auction process that produced no viable offers.

2. The United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") approved a sales process that set forth a bid deadline, auction date, and sale hearing date in that order approving bidding procedures entered on January 6, 2017 [Docket No. 256] (the "Bid Procedures Order"). Although the Debtor hired a broker who went out to the marketplace, no

---

[1] Paul and Evy Paye LLC have also filed an Emergency Motion for Stay Pending Appeal (the "Paye Motion for Stay").

[2] All references to docket number refer to the Debtor's bankruptcy docket.

qualified bids were received by the bid deadline. See Stay Motion Hearing Transcript[3] at pp. 104-105 (noting that the sale process "failed").

3. Thereafter, as the Debtor's plan exclusivity period had terminated, several parties filed proposed plans of reorganization or liquidation. The Bankruptcy Court advised the parties in interest that unless a viable plan for the Debtor's sale or reorganization was presented promptly, the Bankruptcy Court would consider converting the case to a chapter 7 liquidation, or granting relief from stay to permit Hall to foreclose on the Debtor's property.

4. While multiple parties filed plans and disclosure statements by the July 5th deadline, for various reasons, most of those parties either withdrew, or declined to proceed with, their plans. Ultimately, after holding five disclosure statement hearings and considering 12 disclosure statements/plans that were filed or amended, the Bankruptcy Court approved only one disclosure statement: the one jointly proposed by Lawrence and the Committee (together, the "Plan Proponents") for the *Plan of Liquidation for New Cal-Neva Lodge, LLC Jointly Proposed by Lawrence Investments, LLC and the Official Committee of Unsecured Creditors Dated August 7, 2017* (Docket No. 761, which was amended as of August 16, 2017 per Docket No. 803, the "Plan")[4]. In recognition of the fact that the Debtor was administratively insolvent, and lacked the funds to pay ongoing operating expenses, the Bankruptcy Court set a Confirmation Hearing for the Plan for September 14, 2017.

5. The Plan provided for the Debtor's assets to be sold to the highest bidder for cash at an open auction sale to be conducted before the Bankruptcy Court at the Confirmation Hearing. Under the Plan, Lawrence made a stalking horse bid for $38 million cash in total consideration, which was subject to overbid. However, at the Confirmation Hearing, no party elected to make an overbid. Indeed, even secured creditors like Hall, that were given the opportunity to credit bid, so that the Plan would comply with the cram down provisions of Section 1129, declined to do so,

---

[3] The Transcript of Motion to Stay Pending Appeal with Certificate of Service Filed by Frank J. Wright on Behalf of Hall-CA NV, LLC [980]; Motion to stay Pending Appeal Filed by Holly E. Estes on Behalf of Evy Paye, Paul Paye [992] Before the Honorable Gregg W. Zive, United States Bankruptcy Judge shall be referred to as the "Stay Motion Hearing Transcript."

[4] This brief will adopt the definitions contained in the Plan without re-definition here.

3

1  implicitly recognizing the fact that the Lawrence bid under the Plan was the highest and best offer
2  for the Debtor's assets.

3    6. At the Confirmation Hearing, Hall objected to confirmation of the Plan[5].  The
4  Bankruptcy Court conducted a full-day trial on the Plan, at which both Hall had a full and fair
5  opportunity to raise its objections, present evidence, and cross-examine witnesses.  The
6  Confirmation Hearing transcript is 271 pages long.

7    7. At the end of the Confirmation Hearing, the Bankruptcy Court overruled various
8  objections (including those raised by Hall and Paye), and announced its decision to confirm the
9  Plan.  Over the next few weeks, the Plan Proponents attempted to reach agreement with various
10 parties (including Hall and Paye) to ensure that the written order and findings accurately reflected
11 the Bankruptcy Court's ruling.  These efforts involved numerous versions of each document, and an
12 additional hearing at which the Bankruptcy Court advised the parties on its views with respect to
13 certain disputed language in the order and findings.

14   8. Finally, on October 16, 2017, the Bankruptcy Court entered its order confirming the
15 Plan (Docket No. 966, the "<u>Confirmation Order</u>") and the Findings of Fact and Conclusions of Law
16 in connection with the Plan (Docket No. 965, the "<u>Findings</u>").  The Confirmation Order is 19 pages
17 long, and contains detailed provisions regarding the implementation of the Plan, and the various
18 transactions that the Bankruptcy Court authorized in connection therewith.  The Findings are 23
19 pages long, and include extensive detail regarding the findings of fact that the Bankruptcy Court
20 made in confirming the Plan, and the legal conclusions that the Bankruptcy Court made, all based
21 on the extensive record resulting from the full day trial on the confirmation of the Plan. As indicated
22 in the Findings, the Plan addresses all of the Section 1129 issues.

23   9. By its terms, the Confirmation Order is subject to a 7 day stay that expires on
24 October 23, 2017, and the Plan was expected to go effective shortly thereafter.  However, Hall filed
25 a notice of appeal with respect to the Confirmation Order.  Hall and Pay also both sought a stay of

---

[5] Paul and Evy Paye LLC ("Paye") also objected at that hearing.  Lawrence and the Committee reserve all rights to oppose separately any relief sought by Paye.

4

the Confirmation Order before the Bankruptcy Court to prevent the consummation of the Plan.

10. If the Plan is allowed to proceed, Lawrence will pay the Debtor's estate a total of $38 million, comprised of (a) $35.8 million as the Purchase price for the Debtor's Resort hotel and the Fairwinds Estate, and (b) a $2.2 million Plan Payment that will be used to fund various administrative claims and cure payments. The Plan provides for the appropriate treatment of Hall, the mechanic's lien creditors, and unsecured creditors.

11. On the other hand, if the Bankruptcy Court had entered a stay of the Confirmation Order pending resolution of the appeals (or if this Court decides to do so), then the Sale provided for under the Plan will not close by the end of October, which is a condition of Lawrence's bid. If the Sale to Lawrence's assignee (the Buyer under the Plan) does not timely close, then the Buyer no longer will be obligated to proceed with the Sale. Since there was no back-up bidder at the auction (nobody else even bid), the almost certain result of the entry of a stay will be that Debtor's estate will lose the benefit of the Buyer's $38 million offer; Hall will be granted relief from stay (and potentially recover less than it would under the Plan); the Debtor's case will convert to a chapter 7 liquidation; and unsecured and administrative creditors (who receive substantial value under the Plan), will get nothing. This is the real and substantial cost of imposing a stay.

12. On October 20, 2017, the Bankruptcy Court held a hearing on the motions to stay before it. The Bankruptcy Court denied the request to stay the Confirmation Order pending resolution of the appeals. However, the Bankruptcy Court did grant a limited extension of the existing stay through October 25, 2017 at 5:00 p.m.

13. As set forth herein, in denying the requests to stay the Confirmation Order pending resolution of Hall's appeal, the Bankruptcy Court correctly considered each of the four elements of a motion to stay and made factual findings with respect to each factor:

**II.    Argument**

    **A.    Legal Standard**

On appeal, a denial of a motion for stay pending appeal will be reviewed for abuse of discretion. *U.S. v. Peninsula Comms., Inc.*, 287 F.3d 832, 838 (9th Cir. 2002). "The abuse of

discretion standard on review of the bankruptcy court's order denying a stay encompasses a de novo review of the law and a clearly erroneous review of the facts with respect to the underlying issues." *Dynamic Finance Corp. v. Kipperman (In re North Plaza)*, 395 B.R. 113, 119 (S.D. Cal. 2008). The Bankruptcy Appellate Panel of the Ninth Circuit has long recognized that it is "important to the properly functioning bankruptcy court that the trial judge's rulings on stays pending appeal be disturbed only in the event of error or abuse of discretion." *Wymer v. Wymer (In re Wymer)*, 5 B.R. 802, 808 (B.A.P. 1980).

In determining whether to issue a stay pending appeal pursuant to Bankruptcy Rule 8007, a court considers four factors: (1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury if the stay is not granted; (3) whether no substantial harm will come to appellee as a result of the stay; and (4) whether the stay will do no harm to the public interest. *See, e.g., In re Station Casinos, Inc.*, 2010 Bankr. Lexis 5438, *8 (Jul. 26, 2010) (citing *Wymer v. Wymer (In re Wymer)*, 5 B.R. 802, 806 (BAP 9th Cir. 1980); *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 191 B.R. 433, 444 (E.D. Cal. 1995).

"The four elements are conjunctive and each factor must be shown by a preponderance of the evidence." *Station Casinos* at *10 (citing *Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.)*, 367 B.R. 516, 519 (Bankr. D. Del. 2007)). Moreover, the "party moving for a stay has the burden on each of these elements." *Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 843 (E.D. Cal. 2006) (quoting *In re Shenandoah Realty Partners, L.P.*, 248 B.R. 505, 510 (W.D.Va. 2000)). "If a party fails to establish one of the four prongs, a court may deny the requested stay." In re Polariod Corp., 2004 WL 253477 at *1 (D. Del. Feb. 9, 2004) (citing *In re ANC Rental Corp.*, 2002 WL 1058196, at *2 (D. Del. May 22, 2002)) (emphasis added); *In re Blackwell*, 162 B.R. 117, 120 (E.D. Pa. 1993). See also *In re Irwin*, 338 B.R. at 843 (citing *In re Deep*, 288 B.R. 27, 30 (N.D.N.Y. 2003)) ("Movant's failure to satisfy one prong of the standard for granting a stay pending appeal dooms the motion."); *Orquiza v. Walldesign, Inc.*, 2013 WL 4039409 at *2 (D. Nev. Aug. 6, 2013) ("The court finds that because the parties seeking the stay cannot meet

1  either of the first two elements then it is unnecessary to address the latter two elements.  The parties

2  seeking the stay have not met their burden and the court declines to stay the proceedings pending

3  appeal.").

4  A "stay pending appeal is an extraordinary remedy." *In re Station Casinos, Inc.*,

5  2010 Bankr. LEXIS 5438 at * 9 (Bankr. D. Nev. July 26, 2010).  However, where the stay would

6  provide the movant with the ultimate relief desired, the movant's burden of proof is even higher.

7  See, e.g., *iCall, Inc. v. Tribair, Inc.*, 2012 WL 5878389 at *4 (N.D. Cal. Nov. 21, 2012) (noting that,

8  although the Ninth Circuit has not addressed this issue, a heightened standard "has been employed

9  by other circuits, and the reasoning of those courts seems sound").[6]

10  Here, as discussed above, the imposition of a stay would grant Hall the ultimate relief

11  it seeks – the undoing of the confirmed Plan.  If the Confirmation Order is stayed, the Buyer is will

12  have the right to walk away from the $38 million Plan transaction, and the estate will be left with no

13  alternative, let alone a better alternative.[7]  Under these circumstances, in seeking a stay, Hall must

14  satisfy the heightened burden of proof as discussed by the court in *iCall, Inc. v. Tribair*.  Halldid not

15  meet this burden of proof, and the Bankruptcy Court did not abuse its discretion in not staying

16  confirmation of the Plan pending resolution of their appeals.

17  **B.    Hall is Unlikely to Succeed on the Merits of Their Appeals.**

18  Courts in this jurisdiction have used several different formulations to articulate the

19  necessary showing for success on the merits.  "Regardless of how one expresses the requirement,

20  the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a

---

[6] *See also Edmisten v. Werholtz*, 287 Fed. Appx. 728, 731 (10th Cir. 2008) (stating that where an injunction would provide a movant "with substantially all the injunctive relief he seeks" it is a "disfavored injunction" and subject to a "heightened burden"); *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where. . .an injunction will provide the movant with substantially all the relief that is sought and the relief cannot be undone even if the defendant prevails at a trial on the merits."); *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993) ("The burden on the movant is a heavy one where, as here, granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits.") (internal quotations omitted).

[7] What is not as clear as it should be in Hall's briefing is that Hall is receiving cash, and if it prevails in the mechanics' lien litigation, it will be paid the full amount of its secured claim.

1  substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011).
2  Hall fails to satisfy this burden.

3        Hall argues that the Plan should not have been confirmed because (a) the Plan allegedly
4  violates Bankruptcy Code section 1129(a)(3) [good faith], and (b) the Bankruptcy Court lacked
5  jurisdiction over Fairwinds Estate, which is to be sold to Buyer under the Plan.  Hall also argues that
6  under the Plan, it does not receive the "indubitable equivalent" of its collateral.  Each of these
7  arguments is based on a misunderstanding of the Plan and bankruptcy law.

8        Notably, in considering this factor, the Bankruptcy Court noted that the "[P]lan was fully
9  briefed, argued, considered, [and] considered after the hearing," when the Bankruptcy Court "went
10 through all the findings and conclusions with counsel on the record."  See Stay Motion Hearing
11 Transcript at p. 102.  See also id. at p. 106 ("I read nothing and heard nothing that made me
12 reconsider my findings and conclusions that led to the confirmation of the plan.").  The Bankruptcy
13 Court correctly found that Hall was not likely to succeed on the merits.

14       1.      The Plan Complies with 11 U.S.C. § 1129(a)(3).

15       Bankruptcy Code section 1129(a)(3) states that a plan will only be confirmed if it
16 was "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  At
17 the Confirmation Hearing, and again in the Hall Stay Motion, Hall argues that the Plan was not
18 proposed in good faith, and violates state law, because the Plan supposedly strips Hall of its rights
19 and remedies under a Pledge and Security Agreement ("Pledge Agreement") between Hall and CR-
20 Lake Tahoe, LLC ("CR Lake Tahoe").  Good faith is determined based on the "totality of the
21 circumstances" on a "case-by-case basis, taking into account the particular features of each plan."
22 *Hornwood v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074-75 (9th Cir. 2002)
23 (quoting *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982)).  "A plan is proposed in
24 good faith where it achieves a result consistent with the objectives and purposes of the Code."  Id. at
25 1074.  Good faith also requires "a fundamental fairness in dealing with one's creditors."  *In re*
26 *Stolrow's, Inc.*, 84 B.R. 167, 172 (9th Cir. BAP 1988).  The fact that a plan is proposed by a
27 creditors' committee is strong evidence that the plan is proposed in good faith.  *In re Piece Goods*,
28

FENNEMORE CRAIG P.C.
300 East Second Street, Suite 1510
Reno, NV 89501
Tel: (775) 788-2200   Fax: (775) 786-1177

1  188 B.R. 778, 791 (Bankr. M.D.N.C. 1995) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528

2  (1984)). "Undoubtedly, '[t]he bankruptcy judge is in the best position to assess the good faith of the

3  parties' proposals.'" *In re Kemp*, 134 B.R. 413, 415 (Bankr. 1991) (quoting *Jasik v. Conrad (In re*

4  *Jasik)*, 727 F.2d 1379, 1383 (5th Cir. 1984)).

5  After a full day trial, the Bankruptcy Court made detailed findings on the good faith issue:

6  See Findings at ¶8 (emphasis added).

7  At the Confirmation Hearing, Hall was not able to present any credible evidence to

8  contradict the ample evidence of good faith presented by the Plan Proponents. As a result, after the

9  Confirmation Hearing transcript was complete, and after all parties had an opportunity to weigh in

10 on, and object to, the proposed findings, the Court entered the detailed Findings quoted above. Now,

11 more than a month after the Confirmation Hearing, the Hall Stay Motion does not present any

12 additional substantive argument or evidence on this point. On the good faith issue, Hall failed to

13 meet its burden of proof to show it is likely to prevail on the merits of their appeals.

14 Hall also argues that the implementation of the Plan is by means "forbidden by law,"

15 in violation of Bankruptcy Code section 1129(a)(3). Specifically, Hall argues that the Plan violates

16 state contract law by supposedly causing a breach of the Pledge Agreement between Hall and CR

17 Tahoe. This argument appears to be premised on the incorrect belief that the Court cannot exercise

18 jurisdiction over Fairwinds Estate.

19 These issues all were all extensively briefed and argued at the Confirmation Hearing.

20 First, on the issue of jurisdiction with respect to the Plan's transfer of the Fairwinds Estate, the

21 Bankruptcy Court found that:

> Section 1129 (a)(3) of the Bankruptcy Code requires that a plan be proposed "in good faith and not by any means forbidden by law." Good faith is evaluated under the totality of the circumstances. *Jorgensen v. Federal Land Bank of Spokane (In re Jorgensen), 66 B.R. 104, 108-09* (B.A.P. 9th Cir. 1986)*; Jasik v. Conrad (In re Jasik), 727 F.2d 1379, 1383* (5th Cir. 1984)*.* Good faith requires a reasonable likelihood that a plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *See Ryan v. Louis (In re Corey), 892 F.2d 829, 835* (9th Cir. 1989)*; Stolrow v. Stolrow's, Inc. (In re Stolrow's Inc.)*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988)*; In re Madison Hotel Assocs., 749 F.2d 410, 424-25* (7th

FENNEMORE CRAIG P.C.
300 East Second Street, Suite 1510
Reno, NV 89501
Tel: (775) 788-2200   Fax: (775) 786-1177

> Cir. 1984)*; In re Nite Lite Inns*, 17 B.R. 367, 370 (Bankr. S.D. Cal. 1982). In addition, the good faith standard requires that the plan be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be [effectuated]." *See In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999). The fact that a plan is proposed by a creditors' committee is strong evidence that the plan is proposed in good faith. *In re Piece Goods, 188 B.R. 778, 791* (Bankr. M.D.N.C. 1995) *(*citing *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528 (1984)). In this case, the Plan Proponents have proposed a plan that is expected to pay all of the Allowed Administrative Claims, Claims for Professional Fees (up to an aggregate of $1.2 million), plus Priority Tax Claims and Other Priority Claims, and which will result in a greater distribution to General Unsecured Creditors than would otherwise be available under a chapter 7 liquidation. Additionally, as set forth in the Committee Supporting Declaration, <u>the Plan incorporates the highest and best opportunity to maximize the value of the estate's assets for all constituents at this time, or any time in the foreseeable future. The Plan is jointly proposed by the Committee and Lawrence and is the result of extensive arms-length negotiations. Accordingly, based on the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan Proponents have proposed the Plan in good faith, consistent with the objectives and purposes of the Bankruptcy Code, and not by any means prohibited by law.</u>

*See* Findings at ¶8 (emphasis added).

At the Confirmation Hearing, Hall was not able to present any credible evidence to contradict the ample evidence of good faith presented by the Plan Proponents. As a result, after the Confirmation Hearing transcript was complete, and after all parties had an opportunity to weigh in on, and object to, the proposed findings, the Court entered the detailed Findings quoted above. Now, more than a month after the Confirmation Hearing, the Hall Stay Motion does not present any additional substantive argument or evidence on this point. On the good faith issue, Hall failed to meet its burden of proof to show it is likely to prevail on the merits of their appeals.

Hall also argues that the implementation of the Plan is by means "forbidden by law," in violation of Bankruptcy Code section 1129(a)(3). Specifically, Hall argues that the Plan violates state contract law by supposedly causing a breach of the Pledge Agreement between Hall and CR Tahoe. This argument appears to be premised on the incorrect belief that the Court cannot exercise

jurisdiction over Fairwinds Estate.

These issues all were all extensively briefed and argued at the Confirmation Hearing. <u>First</u>, on the issue of jurisdiction with respect to the Plan's transfer of the Fairwinds Estate, the Bankruptcy Court found that:

> The scope of the Court's jurisdiction under 28 U.S.C. § 1334 is sufficient to authorize and approve the transfer of the Fairwinds Estate to the Buyer, as provided for under the Plan, given the ability of the Debtor to exercise control over the Fairwinds Estate, among other reasons.

*See* Findings at ¶1.

The Bankruptcy Court's Findings on this point were based on well-established principles of bankruptcy law that permit Bankruptcy courts to enter orders allowing for the sale of interests and/or assets of non-debtor subsidiaries like CR Lake Tahoe.[8] *See, e.g., Amphenol Corp. v. Shandler (In re Insilco Technologies, Inc.)*, 351 B.R. 313 (Bankr. D. Del. 2006) (sale of the debtor's assets and shares of its non-debtor subsidiary through a 363(b) sale had previously been approved by the court). Indeed, bankruptcy courts have ordered the sale of non-debtor subsidiary assets. *See Pittsburg Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 650 (3d Cir. 1997) ("[T]he bankruptcy court, at least arguably, had jurisdiction over Smith's assets which PFB indirectly owned through its ownership of Smith. Thus, we have no occasion to consider whether the bankruptcy court acted appropriately when it reached through Smith's corporate structure to approve a sale of the assets.").

<u>Second</u>, with respect to Hall's argument that the Plan somehow impairs its rights under the Pledge Agreement, the Bankruptcy Court addressed this as well at the Confirmation Hearing:

> The Court finds that, regardless of the enforceability of the Pledge Agreement, and regardless of any claims that Paye may have in connection with the Fairwinds Estate and/or the Exchange Agreement, the transfer of the Fairwinds Estate to the Buyer as provided for under the Plan is fair and permissible under the Bankruptcy Code because the Buyer is paying the Estate the $35.8 million Purchase Price on account of all of the Purchased Assets, and those assets specifically

---

[8] CR Lake Tahoe is a wholly-owned subsidiary of the Debtor. CR Lake Tahoe, in turn, owns 100% of 9898 Lake ("<u>9898 Lake</u>"). 9898 Lake in turn, owns 100% of the fee interest in the Fairwinds Estate.

11

>include the Debtor's ultimate equity interest in the Fairwinds Estate. The record reflects that (a) the net equity value of the Fairwinds Estate is worth between negative $43,000 and $300,000; and (b) the $35.8 million Purchase Price that Buyer is paying for the Purchased Assets (the Real Property and the Fairwinds Estate) exceeds by $5.8 million, or almost 20%, the $30 million value that Hall's own appraiser ascribed to the Real Property in the Declaration of Mark Lukens in support of the Hall RFS Motion [Docket No. 645]. Accordingly, <u>the Court finds that under the Plan, Hall will realize all value with respect the Fairwinds Estate that Hall is entitled to receive under the Bankruptcy Code (including in connection with the Pledge Agreement), because under the Plan Hall will received (a) an initial payment from the Purchase Price of approximately $19 million, plus (a) whatever the Court determines Hall to be entitled to pursuant to the Lien Litigation Resolution</u>.

*See* Findings at ¶32(g)(emphasis added).

The Hall Stay Motion presents no new facts or arguments with respect to any of these objections, which were previously presented at the Confirmation Hearing, and overruled by the Bankruptcy Court. Accordingly, the Court should find that the Bankruptcy Court did not abuse its discretion and that Hall has failed to meet its burden to show that they are likely to prevail on the merits of their appeals.

        2.      <u>The Plan Satisfies Bankruptcy Code Section 1129(b)(2)(A).</u>

Hall argues that the Plan violates section 1129(b)(2)(A)(iii) of the Bankruptcy Code because, it contends, Hall is not receiving the "indubitable equivalent" of its collateral. This argument is misplaced. As the Bankruptcy Court found at the Confirmation Hearing, the sale of the Purchased Assets provided for under the Plan was approved pursuant to section 1129(b)(2)(A)(ii), rather than subsection (iii), which implicates the "indubitable equivalent" standard. See Findings at ¶19 ("The Plan here provides for a sale of the Debtor's assets (with the secured creditors having the right to credit bid) and for all of the proceeds of the Debtor's assets to be distributed to secured creditors. Accordingly, <u>section 1129(b)(2)(a)(ii) applies, and it is satisfied here</u>.") (emphasis added).

///

///

**C.     Hall Will Not Suffer Irreparable Injury Without a Stay.**

1.     <u>Mootness is not an Irreparable Injury to Hall.</u>

Hall argues that it will irreparably harmed absent a stay because an appeal of the Confirmation Order will be moot absent a stay. "However, within bankruptcy, a majority of courts have concluded that mootness does not demonstrate irreparable injury." *In re Gardens Reg'l Hosp. and Med. Ctr., Inc.*, 567 B.R. 820, 831 (C.D. Cal. 2017). *See also Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 853 (E.D. Cal. 2006) ("It is well settled that an appeal being rendered moot does not itself constitute irreparable harm.") (quoting *In re 203 N. LaSalle St. Pship.*, 190 B.R. 595, 598 (N.D. Ill. 1995)); *In re Red Mountain Mach.Co.*, 451 B.R. 897, 908-09 (Bankr. D. Ariz. 2011) ("[T]he law is clear in the Ninth Circuit that irreparable injury cannot be shown solely from the possibility that an appeal may be moot."); *In re Calpine Corp.*, 2008 WL 207841 at *4 (Bankr. S.D.N.Y. Jan. 24, 2008) ("[M]erely invoking equitable mootness as the Objecting Shareholders have done here – a risk that is present in any post-confirmation appeal of a chapter 11 plan – is not sufficient to demonstrate irreparable harm.").

*Gardens Regional Hospital*, cited by Hall, is easily distinguishable. In that case, the court found irreparable injury because "the Attorney General seeks review of an important issue of state law that will likely recur in future bankruptcy cases." *In re Gardens Regional Hospital and Medical Center, Inc.*, 567 B.R. at 831-32. Here, Hall is seeking a stay of the Confirmation Order solely for its own benefit; Hall has not demonstrated the existence of any issues on appeal that are important issues of state or federal law that might occur in future bankruptcy cases..

Notably, even though the court in *Gardens Regional Hospital* found the potential for irreparable harm, the court declined to issue a stay. This is so because, as discussed above, absent satisfaction of the other stay factors, a showing of a likelihood of irreparable injury does not entitle a movant to a stay. "[A] stay pending appeal is not a matter of right 'even if irreparable injury might otherwise result.'" *Id.* at 832 (quoting *Nken*, 556 U.S. at 427). *See also In re Station Casinos, Inc.*, 2010 Bankr. LEXIS 5438 at * 9-10 (noting that the finality of bankruptcy orders "would be rendered impotent if an enjoined party could always raise the specter of irreparable injury to trump the trial

court's order, no matter how unlikely an appellate victory on the merits"). Hall must still satisfy the other three factors for the granting of a stay.

As discussed above, the Bankruptcy Court found at the Confirmation Hearing that, to the extent that Hall has any interest in the Fairwinds Estate, pursuant to the Pledge Agreement or otherwise, the Plan provides for Hall to be fully compensated for such interest. *See* Findings at ¶32(g) ("…the Court finds that under the Plan, Hall will realize all value with respect the Fairwinds Estate that Hall is entitled to receive under the Bankruptcy Code (including in connection with the Pledge Agreement)…"). Likewise, at the hearing on Hall's motion to stay, the Bankruptcy Court found that Hall will "get exactly what . . . [Hall] had bargained for at the time it entered into the arrangement, and that includes the pledge agreement. [Hall is] going to be paid its loan. And the Fair Winds [sic] estate was part of the collateral for that loan." See Stay Motion Transcript at p. 103.

But even if the Plan did not fully compensate Hall for any injury it might incur with respect to the Fairwinds Estate, such injury would be fully compensable by monetary damages. "[M]ere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation*." Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984). *See also In re Station Casinos*, 2010 Bankr. LEXIS 5438 at *14 ("An irreparable injury is one that is not remote or speculative, but instead is actual and imminent and for which money damages would not be adequate compensation."). At the Confirmation Hearing, the Bankruptcy Court found that, based on appraisals submitted by Hall's own witnesses, "the net equity value in the Fairwinds Estate…is no more than $300,000." Findings at ¶32(e). Accordingly, to the extent it ever were determined that the Plan improperly deprived Hall of any interest in the Fairwinds Estate, Hall could be fully compensated with monetary damages.

**D.     The Balance of Equities Weighs Against Issuance of a Stay.**

"In considering the balance of equities, a district court has a duty to 'balance the interests of all parties and weigh the damage to each.'" *Overstreet ex. Rel. N.L.R.B. v. Gunderson Rail Services, LLC*, 587 Fed.Appx. 379, 381 (9th Cir. 2014) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l*

14

*Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)).  Here, the damage that the Plan Proponents, the Debtor, and the Debtor's creditors and bankruptcy estate would suffer *as a result of a stay*, greatly outweigh any potential damage that Hall might incur *without a stay*.

If a stay is issued now, the Plan will be blocked, and the Debtors will not be able to timely transfer the Purchased Assets to the Buyer as required by the Plan, and, in turn, the Buyer will be able to walk away from the deal without penalty.  The Debtor's estate and creditors, in turn, will be deprived of the $38 million in total consideration that it would otherwise receive, and creditors instead likely will face a scenario in which they receive but a fraction of what they are *guaranteed* to receive under the Plan.

The Plan represents the highest and best, and is indeed the only, bid after a process that began more than a year ago with the filing of this bankruptcy on July 2016.  The parties in interest have conducted a full marketing and sales process and a competing plan process.  The Plan was confirmed after due consideration and is the culmination of negotiation and the settlements embodied therein by the key constituents in this case.  The Plan provides for payment in full of (i) administrative claims, including United States Trustee fees; (ii) payment of professional fee administrative claims reduced pro rata to a capped amount by agreement of the professionals; (iii) payment in full of other secured claims such as priority tax claims; (iv) payment in full of creditors that hold allowed unsecured claims of $750 or less; and (v) payment of contested secured lien litigation claims in the order and priority with which they may be entitled to based on further Court order as and to the extent, amount, and validity of their liens from the proceeds of the sale.  *See* Plan at Docket No. 803.  The Plan also provides a mechanism to preserve post-confirmation litigation claims for the benefit of unsecured creditors through the creation of a litigation trust.  *Id.*  If the Committee is unable to consummate the Plan on the timeframe required under the Plan and Asset Purchase Agreement, the only realistic alternative is a liquidation.  *See In re Station Casinos, Inc.*, 2010 Bankr. Lexis 5438 at *15 ("If the Motion for Stay is granted, it will endanger the nonmoving parties' interests in the approved Plan Facilitation Motions and a potentially substantial recovery for the OpCo Lenders…such disruption in the sales process and the uncertainty it would create would

1 likely constitute irreparable harm to the Debtors.").[9]

2 Indeed, the Bankruptcy Court correctly found that "there would likely be substantial harm to the appellee as a result of the stay, talking about the comparison or balancing tests." *See* Stay Motion Transcript at p. 104. The Bankruptcy Court noted that "the entire total consideration of $38 million provides recovery for a number of parties in interest and creditors, especially in this case, that would be lost" and that it was not "sufficient to speculate regarding will there be additional buyers." *See id.* In explaining why the balance of the equities did not favor a stay, the Bankruptcy Court noted:

> We tried to explore every possible opportunity to maximize the value of the assets of this estate, for the benefit of the creditors. And not just the secured creditor, but all the creditors. And I think that was accomplished. All of that would be gone. I have no idea if the transaction doesn't close by the date established by the plan whether Lawrence will cancel the transaction or agree to additional time, no idea whatsoever. But I know that if it does terminate, there will be no money available at this time for anybody.

See Stay Motion Hearing Transcript at p. 105. The Bankruptcy Court's determination that the balance of equities did not favor granting a stay was plainly not an abuse of discretion.

### E.  A Stay is not in the Public Interest.

Here, a stay should not be entered, because it would contravene the public "interest in the swift and just resolution of claims against bankruptcy debtors." *Homestead Holdings, Inc. v. Broome & Wellington (In re PTI Holding Corp.)*, 346 B.R. 820, 832 (Bankr. D. Nev. 2006). *See also In re Baker*, 2005 WL 2105801 at *10 (E.D.N.Y. Aug. 31, 2005) ("Having determined that the Debtor is unlikely to succeed on appeal, I find that the public interest is better served by allowing distributions

---

[9] *See also Gardens Regional Hospital*, 567 BR at 833 ("The injury to the Debtor resulting from issuance of a stay will be substantially greater than the injury to the Attorney General from denial of a stay. The estate is in a precarious financial position and is desperately in need of the funds from the sale. As discussed above, the collapse of the previous sale has already caused the estate's financial position to deteriorate significantly. Issuance of a stay could cause the present sale to collapse, depriving the estate of much-needed funds. By contrast, denial of a stay will most likely result in the Attorney General being unable to obtain appellate review of the Court's decision. This injury is less severe than the financial injury the Debtor would likely suffer were a stay issued, because the Court has found that the Attorney General's appeal is unlikely to succeed and does not raise serious legal questions.")

under the Plan to proceed in an expeditious manner."); In re Station Casinos, Inc., 2010 Bankr. LEXIS 5438 at * 15-16 ("If the Motion for Stay is granted, the Debtors' reorganization process will be hindered and suffer delay, which is against the public interest.").

In addition, "where, as here, a court has taken extensive evidence and briefing and issued a determination on the merits, an interest in finality arises." *In re Station Casinos, Inc.*, 2010 Bankr. LEXIS 5438 at * 9. *See also In re Thorpe Insulation Co*., 677 F.3d 869, 880 (9th Cir. 2012) ("[P]ublic policy values the finality of bankruptcy judgements because debtors, creditors, and third parties are entitled to rely on a final bankruptcy court order."); *In re Calpine Corp.*, 2008 WL 207841 at * 7 (Bankr. S.D.N.Y. Jan. 24, 2008) (quoting *In re Twenty-Six Realty Assocs., L.P.*, 1995 WL 170124 at *16 (E.D.N.Y. April 4, 1995)) (noting the "strong public 'need for finality of decisions, especially in a bankruptcy proceeding.'"); *Adelson v. Smith (In re Smith)*, 397 B.R. 134 , 148 (Bankr. D. Nev. 2008) ("There is a great public interest in the efficient administration of the bankruptcy system."). The Bankruptcy Court correctly considered this public interest in denying the motion by Hall to stay confirmation of the Plan pending resolution of their appeals. *See* Stay Motion Hearing Transcript at p. 106 ("Well, there is a public interest in maximizing the value of the assets in a bankruptcy context to pay creditors, and that's what's happening. And as I indicated, I believe the stay would preclude that from occurring.").

In the Debtor's case, creditors have waited for more than two years without payment, and have watched multiple buyers and plan proponents present offers and plans that never came to fruition. Finally, just when it seemed that there would be no buyer, and no plan, Lawrence appeared with a $38 million offer to be implemented through the Plan. After a long and difficult process, including an open Auction (where Hall and Paye had the opportunity to bid, but chose not to do so), and a full-day trial (where Hall and Paye presented evidence and objections, but were overruled), the Bankruptcy Court confirmed the Plan, signed a 19 page Confirmation Order, and entered 23 pages of detailed findings based on a 271 page Confirmation Hearing Transcript.

The Plan is now ready to take effect immediately upon the expiration of the existing stay. Granting a further stay, as Hall requests, will delay the closing of the Plan such that the Buyer no

longer will be obligated to close.  If the Buyer walks from the deal, the Debtor, its creditors, and the estate stand to lose the benefit of a $38 million transaction that the Court found to be "*the highest and best opportunity to maximize the value of the estate's assets for all constituents at this time, or any time in the foreseeable future.*"  Findings at ¶8 (emphasis added).

On the other hand, as shown above, if a stay is not granted, Hall will likely lose nothing.  But even in a worst-case scenario, and Hall prevails at the appellate level with its Plan objection that the Bankruptcy Court overruled, any losses it potentially could incur can be compensated with monetary damages.  Under these circumstances, the short two day additional stay entered by the Bankruptcy Court should not be extended.

### III. Conclusion

For the foregoing reasons, this Court should find that the Bankruptcy Court did not abuse its discretion in denying to enter a stay pending resolution of Hall's appeal and denies the Hall Motion for Stay.

DATED: October 24, 2017

By /s/ *Eric Goldberg*
**DLA PIPER LLP (US)**
ERIC GOLDBERG

Counsel to Lawrence Investments, LLC

By: */s/ Courtney Miller O'Mara*
Courtney Miller O'Mara (NV Bar No. 10683)
FENNEMORE CRAIG, P.C.

AND

By: */s/ Shirley S. Cho*
Shirley S. Cho
(*pro hac vice application forthcoming in compliance with LR IA 11-2*)
PACHULSKI STANG ZIEHL & JONES LLP

Counsel for the Official
Committee of Unsecured Creditors

## CERTIFICATE OF SERVICE

I certify that I am an employee of FENNEMORE CRAIG, P.C., and that on this date, pursuant to NRCP 5 (b), I am serving a true copy of the foregoing **JOINT OPPOSITION TO HALL CA-NV LLC'S EXPEDITED MOTION TO STAY CONFIRMATION ORDER PENDING APPEAL** on the parties set forth below by:

|   | |
|---|---|
|   | Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices |
|   | Certified Mail, Return Receipt Requested |
|   | Via Facsimile (Fax) |
|   | Placing an original or true copy thereof in a sealed envelope and causing the same to be personally Hand Delivered |
| X | By Notice of Electronic Filing via the electronic filing system as maintained by the Court Clerk's Office |

addressed as follows:

Nathan J. Aman
FAHRENDORF VILORIA OLIPHANT & OSTER, L.L.P
P.O. Box 62
Reno, NV 89504

Attorneys for Appellants

Frank J. Wright (Pro Hac Vice Pending)
2021 McKinney Ave., Suite 1600
Dallas, TX 75201

Attorneys for Appellants

DATED: October 24, 2017

/s/ Meg Byrd
employee of Fennemore Craig, P.C.