1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MUSHKIN • CICA • COPPEDGE**
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

DAWN M. CICA, ESQ.
Nevada Bar 4565
**MUSHKIN • CICA • COPPEDGE**
4475 S. Pecos Rd.
Las Vegas, Nevada 89121
(702) 386-3999
(Fax) (702) 869-2669
Email: dcica@mccnvlaw.com

*Counsel for The Penta Building, Group, LLC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>NEW NEVA LODGE, LLC<br><br>          Debtor. | Case No.: 17-cv-00636-RCJ<br><br>Appeal Ref. No. 17-49<br>Bankruptcy Court Case No. 16-51282-GWZ<br>Chapter 11 |
| HALL CA-NV, LLC<br><br>          Appellant,<br><br>v.<br><br>LAWRENCE INVESTMENTS, LLC;<br>OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS<br><br>          Appellee. | Date:   October 24, 2017<br>Time:  3:00 p.m. |

### OPPOSITION TO HALL CA-NV, LLC'S EXPEDITED MOTION TO STAY CONFIRMATION ORDER PENDING APPEAL

The PENTA Building Group, LLC ("PENTA"), by and through its counsel, Dawn M. Cica

of the law firm of MUSHKIN • CICA • COPPEDGE, hereby submits its *Opposition* ("Opposition") to

*Hall CA-NV, LLC's Expedited Motion to Stay Confirmation Order Pending Appeal* [Docket No.

6] (the "Motion").

This Opposition is made and based on the points and authorities which follow, the

pleadings and papers contained in the Court's file, judicial notice of which is hereby requested,

1

1   and any oral argument the Court may permit at the hearing on this Motion.

2          Dated: October 24, 2017.

3                                          **MUSHKIN•CICA•COPPEDGE**

4

5                                          By */s/ Dawn M. Cica*
                                           DAWN M. CICA, ESQ.
6                                          Nevada Bar 4565
                                           **MUSHKIN•CICA•COPPEDGE**
7                                          4475 S. Pecos Rd.
                                            Las Vegas, Nevada 89121
8

9                                          *Counsel for The Penta Building Group, LLC.*

10                                         **I.**
11                                  **PRELIMINARY STATEMENT**

12         This appeal is over the stay of confirmation of a Plan that will pay the Appellant, Hall CA-

13   NV, LLC ("Hall") in full if it is the senior secured creditor, including interest at the default rate.

14         Hall and Penta are about to proceed with a lien priority dispute over who has a first priority

15   secured position.[1] Therefore, Hall's representations to this Court that it is the senior secured creditor

16   are false and misleading.  Penta asserts that its mechanic liens prime Hall's lien.[2]

17         The underlying bankruptcy case involves the historic Hotel/Casino/Resort called the

18   CalNeva (the "Project").

19

20   [1] The respective priority of Penta and Hall's position as senior secured creditor is the subject currently of a
     consolidated adversary proceeding pending in the United States Bankruptcy Court, District of Nevada filed
21   in Bankruptcy Case 16-51282-GMZ and titled *THE PENTA BUILDING GROUP, LLC, v. NEW CAL-NEV
     A LODGE, LLC; HALL CA-NV, LLC, TRUSS CAPITAL PARTNERS, LLC, BOE BONDING COMPANIES
22   I through X; DOES I through X; LOE LENDERS I through X; ROE CORPORATIONS I through X; TOE
     DEFENDANTS I through X, inclusive, and ALL RELATED CLAIMS* consolidated under Case No. 16-
23   05036-GMZ which is set for trial in January 2018.

24

25   [2] Nevada has a very strong public policy in favor of mechanic liens. Contractors who provide labor and
     material are considered extremely valuable to the State, whose main revenue derives from tourism.  The
26   Nevada Supreme Court has remarked upon the vulnerability of contractors in situations exactly like this
     one, and has consistently upheld the rights of these parties as against lenders who are in the business of
27   loaning money and taking risk.

28

By way of introducing the players, Penta is the general contractor for the renovation of the Cal Neva Hotel and Casino, which renovation began in July of 2013.  The building, built in the early 1900's literally stretches 50 feet over the Nevada State Line into California.  This Project, which has always been operated as if it were one property, is widely considered one of the jewels of the northern shore of Lake Tahoe, with fabulous views of the Lake from the rooms. The Nevada side comprises the vast majority of the land and improvements. California ceded authority over entitlements to Nevada when the property was initially built so all of the entitlements currently come from the Nevada side and the California side has none.  On the California side, in addition to the 50 feet of building, there is surface parking, an access road and some old cabins.

New Cal Neva Lodge, LLC (the "Debtor") filed its bankruptcy case in July of 2016. Following the Debtor's inability to sell the Project, the Official Unsecured Creditors Committee (the "Committee") insisted that the Debtor terminate exclusivity.  In early 2017 the Court held an auction based on bid procedures agreed to by the secured creditors, the Debtor and the Committee. No qualified bids were received.

The Court worked through the rest of 2017 to attempt to confirm a plan with a stalking horse bidder.  Over 30 parties did significant due diligence.  Ultimately there were plans proposed by the Debtor, by Ladera Development, LLC, by Penta jointly with Northlight, by certain upstream owners of the Debtor's parent and finally, by the Committee jointly with Lawrence Investments, LLC ("Lawrence"), which is the investment arm of Larry Ellison of Oracle (the "UCC/LI Plan" or the "Plan").

This Plan provides that at consummation out of the $35.8 million, there is a reserve of $15 million to pay Penta and other mechanics lien holders in the event that they prevail in the Lien Priority Litigation. Virtually all the rest is paid to Hall at closing (approximately $19 million). If Hall prevails in the Lien Priority Litigation, the Plan pays Hall in full, with interest at the default rate. One wonders why Hall is fighting the Plan.

After several hearings and a settlement conference all of the plan proponents agreed that the UCC/LI Plan would be the stalking horse plan. It provided for an auction and overbids of its $38 million stalking horse bid.  No one overbid.

Hall filed a motion to credit bid at the auction. Hall chose not to credit bid.

Hall filed the same objections to confirmation which were contained in its brief to the Bankruptcy Court when it applied for a stay, and in its brief to this Court.  In an all-day evidentiary confirmation hearing the Bankruptcy Court carefully considered each of Hall's arguments as evidenced by the 272 page transcript of the confirmation hearing. *See* Confirmation Hearing Transcript [DE 920][3]

Following the confirmation hearing all of the parties negotiated extensively with respect to language of the findings and the order, and after a half day hearing on October 3, 2016 where the Court considered filed objections to the findings and the order that were proposed by the Plan Proponents, and went line by line through everyone's comments on both the findings and the order, on October 16, 2017, the Court entered its order confirming the Plan (Docket No. 966, the "Confirmation Order") and the Findings of Fact and Conclusions of Law in connection with the Plan (Docket No. 765, the "Findings").  Again, the Bankruptcy Court carefully considered Hall's objections. See Transcript of hearing October 3, 2017. [DE 986]

The finally entered Confirmation Order is 19 pages long, and contains detailed provisions regarding the implementation of the Plan, and the various transactions that the Court authorized in connection therewith.  The Findings are 23 pages long, and include extensive detail regarding the findings of fact that the Court made in confirming the Plan, and the legal conclusions that the Court made, all based on the extensive record resulting from the full-day evidentiary trial on the confirmation of the Plan.

If the Plan is allowed to proceed, Lawrence will pay the Debtor's estate a total of $38 million, comprised of (a) $35.8 million as the Purchase price for the Debtor's Resort hotel and the Fairwinds Estate (which the evidence admitted by the Court valued at $300,000 or less), and (b) a $2.2 million Plan Payment that will be used to fund various the payment of various administrative claims and cure payments in support of confirmation of the plan.

---

[3] See Docket to Debtor's Bankruptcy Case 16-51282-GWZ.  Unless otherwise indicated all cites to Dockets are to the Bankruptcy Court Docket.

MUSHKIN • CICA • COPPEDGE
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

4

MUSHKIN • CICA • COPPEDGE
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

If there is a stay, **Lawrence does not have to close on the Plan.** Hall misleads this Court by ignoring this fact. Lawrence will likely not close on the Plan, giving Hall the ultimate relief they seek by appealing confirmation. If Lawrence does not close on the Plan, the estate and its creditors will be back in the same position that existed a year ago, Penta and the other mechanics lien holders will have lost their $15 million Lien Priority Reserve and Hall will likely proceed on its Motion for Relief from Stay. None of the creditors of the estate (other than Hall) will receive anything.  This is Hall's ultimate goal.

## II.
## LEGAL ARGUMENT

The grant of injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co. (In re Coast Cities Truck Sales, Inc.)*, 147 B.R. 674, 676 (D.N.J. 1992) (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)) (emphasis added).   These are not those circumstances.  If the stay is granted, Lawrence will not close and the estate will not get $38 million.  If the stay is <u>not</u> granted and Hall is the senior secured creditor, Hall will be paid in full.  Also, if the stay is <u>not</u> granted and Hall's lien is junior to mechanics liens it will still get approximately $24 million, which is close to its principal plus non-default interest and fees.

There was a fulsome review of Hall's objections on three different occasions by the Bankruptcy Court and there is an extensive evidentiary record which is not challenged. Clearly the Bankrutpcy Court considered Hall's arguments carefully and provided excellent reasons for overruling them. Therefore it is unlikely that Hall will prevail on the merits.

 The only basis that Hall alleges for irreparable injury is mootness.  Mootness is not a sufficient basis for irreparable injury, especially given the heightened standard which applies here, since if Hall is successful in obtaining a stay they will get the ultimate relief they seek in the appeal.

If Hall is successful in the stay, Penta and the other mechanics lien holders will be irreparably injured because Lawrence won't close on the purchase of the Resort and the $15 million Lien Litigation Reserve will not be funded. If the stay <u>is</u> granted, the entire Plan will fail, which will frustrate the public policy of the Bankruptcy Code.

MUSHKIN • CICA • COPPEDGE
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

**A.      Legal Standard on Appeal**

On appeal, a denial of a motion for stay pending appeal will be reviewed for abuse of discretion. *U.S. v. Peninsula Comms., Inc.*, 287 F.3d 832, 838 (9th Cir. 2002). "The abuse of discretion standard on review of the bankruptcy court's order denying a stay encompasses a de novo review of the law and a clearly erroneous review of the facts with respect to the underlying issues." *Dynamic Finance Corp. v. Kipperman (In re North Plaza)*, 395 B.R. 113, 119 (S.D. Cal. 2008). The Bankruptcy Appellate Panel of the Ninth Circuit has long recognized that it is "important to the properly functioning bankruptcy court that the trial judge's rulings on stays pending appeal be disturbed only in the event of error or abuse of discretion." *Wymer v. Wymer (In re Wymer)*, 5 B.R. 802, 808 (B.A.P. 1980). Clearly, based on Judge Zive's careful review of Hall's arguments at the confirmation hearing, at the hearing regarding the line by line review of the Findings and Order and at the most recent hearing on Hall's Motion for Stay, Judge Zive has considered Hall's arguments on three different occasions and has overruled them based on the extensive evidentiary record in this case.

The joint objection of the Committee and Lawrence filed concurrently herewith discusses the legal standard for the required showing of a stay.

**B.      Irreparable Injury to Hall**

Because Hall will be paid in full if the Plan is consummated, the only irreparable injury Hall can allege is potential mootness.

**1.      Mootness is Not Irreparable Injury.**

As the Bankruptcy Court held in the Stations Casino Case back in July 2010: an "irreparable injury is one that is not remote or speculative, but instead is actual and imminent and for which money damages would not be adequate compensation". *In re Station Casinos, Inc.*, 2010 Bankr. LEXIS 5438 at * 14 (Bankr. D. Nev. July 26, 2010) (citing *In re PTI Holding Corp., 346 B.R. 820,827 (Bankr. D. Nev. 2006))*.

/ / /

/ / /

/ / /

MUSHKIN • CICA • COPPEDGE
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

a. <u>Hall argues ONLY that their irreparable injury arises because of potential mootness.</u>

Hall cites *In re Garden Regional Hospital* (a 2017 decision from the central district of California), which clearly says that "within bankruptcy, a majority of courts have concluded that mootness does not demonstrate irreparable injury." *In re Gardens Regional Hospital and Medical Center, Inc.*, 567 B.R. 820, 831 (C.D. Cal. 2017). *See also Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 853 (E.D. Cal. 2006) ("It is well settled that an appeal being rendered moot does not itself constitute irreparable harm.") (quoting *In re 203 N. LaSalle St. Pship.*, 190 B.R. 595, 598 (N.D. Ill. 1995))

The *In re Garden Regional Hospital* Court then goes to cite exactly the same cases that Hall cites in footnote 38 of their Motion to Stay in the Bankruptcy Court [DE 980]: *See, e.g., Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 853 (E.D. Cal. 2006) *("*It is well settled that an appeal being rendered moot does not itself constitute irreparable harm*"); In re Red Mountain Mach. Co.*, 451 B.R. 897, 908-09 (Bankr. D. Ariz. 2011) *(internal citations omitted) ("*[T]he law is clear in the Ninth Circuit that irreparable injury cannot be shown solely from the possibility that an appeal may be moot*"); In re Convenience USA, Inc.*, 290 B.R. 558, 563 (Bankr. M.D.N.C. 2003) *(*stating that "a majority of the cases which have considered the issue have found that the risk that an appeal may become moot does not, standing alone, constitute irreparable injury" and citing cases*).*

In the district of Nevada, our bankruptcy judges agree with the Ninth Circuit.  Judge Beesley denied a stay in the Ahern Rentals case (11-53860) based in part on no finding of irreparable injury. The District Court in that same case upheld the denial of the stay. (12-00676).

b. <u>Hall has an especially high burden because a stay gives them the ultimate relief that they are looking for in the appeal.</u>

Because the stay would allow Lawrence to walk away from the purchase, which would

make the plan unable to be consummated, Hall has an especially high burden to show irreparable injury. This is because the stay would give Hall the same relief they would get if it won the appeal. And where the stay would provide the movant with the ultimate relief desired, the movant's burden of proof is even higher. *See, e.g., iCall, Inc. v. Tribair, Inc.*, 2012 WL 5878389 at *4 (N.D. Cal. Nov. 21, 2012) (noting that, although the Ninth Circuit has not addressed this issue, a heightened standard "has been employed by other circuits, and the reasoning of those courts seems sound").[4]

Since Hall fails "to meet the 'minimum showing' of a threat of irreparable injury, the *In Re Irwin* Court in the Eastern District of California said that the court needs to go no further to decide whether [the] movant[] [is] . . . likely to succeed on the merits.'" *In re Irwin*, 338 B.R. 338 B.R. 839, 854 (E.D. Cal. 2006) and Red Mountain says *"It is a 'bedrock requirement that stays must be denied to all petitioners who did not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors.'"* *See In re Red Mountain Machinery Co.*, 451 B.R. 897, 899-900 (Bankr. D. Ariz. 2011) (citing *Leiva-Perez*, 640 F.3d 962, 964 (9th Cir. 2011)).

### 2.   Hall has not alleged irreparable injury based on Fairwinds.

Hall's Fairwinds' argument goes to whether Hall will prevail on the Merits. With respect to Fairwinds, it is clear that to the extent there is a breach of the Hall's Pledge Agreement (which was issued by a subsidiary for no consideration),, Hall retains exactly what it bargained for, as Hall admits in paragraph 24 of its Motion for Stay filed in the Bankruptcy Court. Paragraph 24 says By the Pledge Agreement, the Debtor's subsidiary, CR Lake Tahoe, pledged 100% of its

---

[4] *See also Edmisten v. Werholtz*, 287 Fed. Appx. 728, 731 (10th Cir. 2008) (stating that where an injunction would provide a movant "with substantially all the injunctive relief he seeks" it is a "disfavored injunction" and subject to a "heightened burden"); *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where. . .an injunction will provide the movant with substantially all the relief that is sought and the relief cannot be undone even if the defendant prevails at a trial on the merits."); *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993) ("The burden on the movant is a heavy one where, as here, granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits.") (internal quotations omitted).

MUSHKIN • CICA • COPPEDGE
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

membership interests in 9898 Lake to secure the Debtors' loan obligations to Hall. The Pledge Agreement explicitly prohibits CR Lake Tahoe from transferring the non-estate assets that are contemplated to be transferred in the Amended Plan. Any attempt to do so constitutes an event of default that allows Hall to "elect to become a substituted member in the Company with respect to the Pledged Collateral," and requires CR Lake Tahoe to "execute or cause to be executed all documents necessary to evidence [Hall] so becoming a substituted member" So If there is a breach of any covenant (including the covenant not to transfer the property) Hall's bargained for remedy for event of default is for CR Lake Tahoe to give Hall the membership interests in 9898 Lake, which Hall can still get.

Hall did not take an interest in the real property, Hall did not record the covenant not to transfer as an encumbrance against the land. There is no evidence in front of this court as to the value of 9898 Lake as a whole. There may well be other assets.

So as to Hall, the only issue in front of the court is whether the debtor has the legal right, unencumbered by real estate interests (and subject to suits for damages) to transfer the Fairwinds' real property out of 9898 Lake.

Clearly the debtor has that power. The Debtor is the only party who can act to make a transfer since the debtor is the sole member of CR Lake Tahoe, who is the sole member of 9898 Lake. From a real estate perspective, it is very simple.

Hall has no rights in the underlying real property. Hall has no rights to foreclose on the real property. Hall would still be entitled to exercise any and all remedies against CR Lake Tahoe and to obtain its bargained for membership interests in 9898 Lake. Nothing stops Hall from going forward in that respect.

The Transfer Documents provide for NCN (as such ultimate signatory in the corporate chain) to transfer the Fairwinds real property to New Cal Neva by Deed. New Cal Neva then will transfer the Fairwinds real property to LI by deed.

Hall still has their relief. To the extent an asset was repositioned, Hall is receiving the full value of such asset as part of the Lawrence distribution.

**MUSHKIN • CICA • COPPEDGE**
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

Lawrence is not only assuming the loan, but it is paying all of the cure payments to avoid foreclosure. And all equity that is left (which based on the evidence this court has admitted is very little) is going to Hall anyway as part of its initial distribution under the Lawrence plan.

Hall has been very aggressive in this case. If Hall felt that the Fairwinds property was valuable it should have foreclosed on the membership interests pledged to it long before now.

So not only can Hall not prove irreparable injury through mootness, it appears that Hall cannot even prove damages from breach of contract given that the entire equity value (minimal as it is) will be upstreamed to Hall as part of the value of the sale. So, one wonders why they complain.

**C.     Hall will not prevail as to the other arguments on the merits**

    **1.     <u>Transfer mechanics</u>.**

This is clearly a transfer of property under a plan, which enjoys all of the procedural protections that Radlax contemplates. Hall had the ability to credit bid – and chose not to. In this particular case, the property is being conveyed by the Debtor as the sole member (owner) of 9898 Lake to itself as the debtor.   Then the Debtor will sell the Property to Lawrence.

    **2.     <u>Hall's state law rights are not stripped.</u>**

They can still exercise their bargained for remedies under their Pledge Agreement. Although Fairwinds is no longer an asset of the drop-down LLC, as I said before, Hall has been blessed with the equity of Fairwinds as part of the purchase price.

In fact, Lawrence is paying $ 41.5m for the property if you factor in the assumption/payoff of the capital one loan.   The problem is that people are focusing on Capital One as a creditor class.

At the end of the day – there is evidence that Fairwinds is worth $4.9m. That is the only evidence of Fairwinds value admitted in this case. There is evidence of a Capital One loan of at

MUSHKIN • CICA • COPPEDGE
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

least $4.1m with 500-600 due to cure.  So, at the most, according to all evidence Fairwinds is worth $300k.  Hall is getting that $300k upstreamed to it as part of the sale proceeds.  So, Hall may not even have a breach of contract action.

To the extent Capital One is listed as a creditor there is no harm or impact.  They were not relied upon as an impaired consenting class.  They could have been left out entirely.  Lawrence is assuming the capital one debt.  In fact, that should increase their purchase amount by $4.1m.  While Hall focuses on the amount of the cure being included it ignores the corresponding loan that is being assumed. If you were to leave the cure and the assumption out, the plan payment reduces by $600k.  If you were to include them both, the value to the estate increases by $3.5m.  This is just a red herring.

### 3.      The Bankruptcy Court's jurisdiction

Hall's Motion for Stay filed in the Bankruptcy Case cites *In re Feitz* at FN 16[5] with respect to the Court's jurisdiction. *In re Feitz* merely talks about the test for determining whether a civil proceeding is related to bankruptcy. That test is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. . Feitz says that the proceeding does not need to even be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. In re Feitz, 852 F.2d at 457.

Here, the debtor has the sole authority to act on behalf of these entities. The only entity that can act for 9898 Lake is CR Lake Tahoe and the only entity that can act for CR Lake Tahoe is the debtor.  And this court certainly has jurisdiction over the debtor.

**MUSHKIN • CICA • COPPEDGE**
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

11

1
2
3
4
5
6
7
8

The debtor has the unilateral ability to control both of those entities – and their assets - because those entities are owned 100% by the debtor. Hall may or may not have a breach contract action for the transfer of Fairwinds.  If it has a breach of contract action it has the remedies that it describes in Paragraph 24 of its Motion for Stay. However, since the value of the equity attributable to the asset being transferred is being paid to Hall, Hall has no damages. Recall that according to Hall's appraisal in evidence the value of Fairwinds is $4.9m. If the cost to cure is $700k, Barbie math gets you net equity of $200k. Which Hall gets at closing.

9
10
11
12
13
14

Hall claims that "In this case, the Plan Proponents are hanging their jurisdictional argument on the fact that the Debtor and 9898 Lake have a common owner.  That is not enough for related-to subject matter jurisdiction."  Again, Hall is misleading the court It is not a question of two subsidiaries that happen to have the same owner.  It is a question of the debtor being the owner of the subsidiaries.  That is a very different corporate reality.

15
16

**4.     Hall's red herring as to indubitable equivalent should be addressed.**

17
18
19
20
21
22
23
24

This is not a dirt for debt plan proposed under 1129( b)( 2)( A)( iii)..  This is a sale under 1129(b)(2)(A)(ii), where Hall had but did not exercise its credit bid rights.  All that is required in 1129 b 2 A ii is that either the lender's liens attach to the proceeds or the lender receives the "indubitable equivalent" of the proceeds.  Since here the proceeds are cash, and Hall is getting paid a portion of the cash at closing and its liens attach to the portion it is not getting, Hall's treatment complies with the code. Frankly this is just another bad faith attempt by Hall to mislead the court and attempt to persuade the court to follow Hall down Alice in wonderlands rabbit hole.

25

**D.     Stay Does No Harm**

26
27
28

With respect to the prong that requires that the stay "does no harm", in the face of the evidence that Lawrence can walk if there is an appeal (much less stay of an appeal) Hall make the

**MUSHKIN • CICA • COPPEDGE**
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

following absurd statement "[Third], no other interested party (including the Plan Proponents) will be substantially injured by a stay allowing Hall *to* seek appellate review of the propriety of the Confirmation Order. The Resort will remain in its present secure and guarded circumstances, and the necessary roof repair work may proceed per the Court's order authorizing the roof repair irrespective of the Appeal and any stay of the Confirmation Order incident thereto. Any delay on a distribution of the Plan Payment funds cannot reasonably be said to equate to a substantial injury, and regardless, any incidental injury that does result from that stay will be substantially outweighed by the irreparable harm to Hall from not granting the stay. The balance of the equities clearly weighs in favor of granting the stay to allow proper appellate review." *See* Hall Motion to Stay. That's a whopper from start to finish. Clearly if the stay is granted, Lawrence won't close. If Lawrence does not close the Mechanics Lien Holders are out their $15m reserve, and every party (including Hall who is going to get paid significantly more than they loaned the debtor – just at closing.

**E.    Creditors of Debtor Will be Substantially Injured**

The real question here has to go to motive. Good faith is the cornerstone of the bankruptcy process. Why would Hall try to crater a deal that virtually makes them whole n terms of what they lent? Why would Hall try to crater a deal that pays $5.8m more than their appraisal? The only answers that come to mind is that they are using the bankruptcy process as a proxy for extortion or they want the property. The first answer is clearly bad faith and the second answer makes no sense given that they could have credit bid on the property.

As was said in a pleading well over a year ago, Hall does not get the benefit of the bankruptcy process without paying the costs. The bankruptcy process was not intended to allow secured creditors to maximize the value of their ostensible collateral, at default interest rates, at

**MUSHKIN • CICA • COPPEDGE**
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

the expense of all of the other creditors and the administrative burden of the estate.

**F.      As to the Public Interest**

Clearly that weighs heavily not on Hall who will get paid in full to the extent they are in first priority, but on the bankruptcy process itself. Courts have found that the bankruptcy process itself is a public interest worthy of protection.

It is a fundamental principle of bankruptcy law that the Bankruptcy Code favors maximization of the Debtor's estate.  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). And  (stating that there is a "strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization, reflected in the Code itself") (citing *In re Continental Airlines*, 91 F.3d 553, 565 (3d Cir. 1996)). Permitting Hall to get a stay which would allow Lawrence to walk would destroy any chance of maximization of the debtor estate.  *See, e.g., In re Morysville Body Works, Inc.*, 86 B.R. 51, 58 (Bankr. E.D. Pa. 1988) ("Granting §362 relief in this case would completely destroy this debtor's chances of a successful reorganization.")  The Debtor's property is essential to the Debtor's successful maximization of its estate.  Indeed, if Hall is successful at killing this deal, Hall will have ensured that public policy is frustrated as Lawrence will not come back to bid, Hall will not loan additional money to protect the collateral and Hall's Motion for Relief from Stay will then become a self-fulfilling prophecy – clearly what they are now hoping for since they chose not to credit bid.

So clearly public interest favors allowing the sale (at which in the worst case, scenario Hall will get all of the money they loaned back, as an initial distribution, and if they win priority

MUSHKIN • CICA • COPPEDGE
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

they will then get all of their default interest).  So again, the question remains: what are they

fighting about.

In any case, the public "interest in the swift and just resolution of claims against bankruptcy

debtors." *Homestead Holdings, Inc. v. Broome & Wellington (In re PTI Holding Corp.)*, 346 B.R.

820,832 (Bankr. D. Nev. 2006).  *See also In re Baker*, 2005 WL 2105801 at *10 (E.D.N.Y. Aug.

31, 2005) ("Having determined that the Debtor is unlikely to succeed on appeal, I find that the

public interest is better served by allowing distributions under the Plan to proceed in an expeditious

manner.").  In addition, "where, as here, a court has taken extensive evidence and briefing and

issued a determination on the merits, an interest in finality arises."  *In re Station Casinos, Inc.*,

2010 Bankr. LEXIS 5438 at * 9.  *See also In re Thorpe Insulation Co*., 677 F.3d 869, 880 (9th Cir.

2012) ("[P]ublic policy values the finality of bankruptcy judgements because debtors, creditors,

and third parties are entitled to rely on a final bankruptcy court order."); *In re Calpine Corp.*, 2008

WL 207841 at * 7 (Bankr. S.D.N.Y. Jan. 24, 2008) (quoting *In re Twenty-Six Realty Assocs., L.P.*,

1995 WL 170124 at *16 (E.D.N.Y. April 4, 1995)) (noting the "strong public 'need for finality of

decisions, especially in a bankruptcy proceeding.'"); *Adelson v. Smith (In re Smith)*, 397 B.R.

134 , 148 (Bankr. D. Nev. 2008) ("There is a great public interest in the efficient administration of

the bankruptcy system.").

**G.    Bond**

If Lawrence does not close, Penta and the other mechanics lien holders will lose the right

to recover on their claims in the Lien Priority Litigation.  Their $15 million reserve will go away.

If Hall loses the appeal, Hall gets paid in full.

Hall is putting this entire bankruptcy at risk in this appeal.  If the court is inclined to grant

the stay notwithstanding the overwhelming evidence of Hall's over reaching, Penta requests that

the court set the bond at an amount equal to what Lawrence is paying (including payment of the

$4m Capitol One loan, since that property will be lost during the appeal) plus costs of the

committee and plan professionals during the appeal, plus the costs of the mechanics lien

MUSHKIN • CICA • COPPEDGE
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

1  professionals during the appeal less the amount Hall is scheduled to get if the Lawrence sale closes.

2  That amount is approximately $26m.

### III.

### <u>CONCLUSION</u>

WHEREFORE, Penta respectfully requests that the Court deny the Motion and for such

other and further relief as this Court deems just and proper.

DATED this 24th day of October 2017.

**MUSHKIN CICA COPPEDGE**

<u>/s/ Dawn M. Cica</u>
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

*Counsel for The Penta Building Group, LLC.*

MUSHKIN • CICA • COPPEDGE
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

16

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of Mushkin • Cica • Coppedge, and that the foregoing *Opposition to Hall CA-NV, LLC's Expedited Motion to Stay Confirmation Order Pending Appeal* was served via electronic service and by direct email to addresses shown below.

Dated this 24th day of October 2017

*/s/ Marsha Stallsworth*
Marsha Stallsworth

**Counsel for Appellant**

Frank J. Wright
Gardere Wynne Sewell LLP
2021 McKinney Ave., Suite 1600
Dallas, TX 75201
fwrigth@gardere.com
frank-wright-1492@ecf.pacerpro.com

Nathan Aman
Farendorf, Viloria, Oliphant & Oster LLP
P.O. Box 62
Reno, NV 89504
naman@renonvlaw.com

**Counsel for Appellee, Official Committee of Unsecured Creditors**

Courtney Miller O'Mara
Fennemore Craig, P.C.
300 E. Second St., #1510
Reno, NV 89504
comara@fclaw.com

Shirley Cho
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067-4003
scho@pszjlaw.com

**Counsel for Appellee, Lawrence Investments, LLC**

Eric Goldberg
DLA Pipe LLP
Suite 400 North Tower
2000 Avenue of the Stars
Los Angeles, CA 90067
eric.goldberg@dlapiper.com

Mushkin • Cica • Coppedge
4475 S. Pecos Rd.
Las Vegas, Nevada 89121

4834-7685-6146, v. 1

17